# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| ZACHARY B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-04100-SLD-RLH |
| ) | |
| FRANK J. BISIGNANO,[1] Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Claimant Zachary B. ("Claimant" or "Plaintiff") seeks review of the final decision of Respondent Frank J. Bisignano, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and denying his application for supplemental security income ("SSI") under Title XVI of the Act. Before the Court are Plaintiff's Brief (doc. 9), Defendant's Brief (doc. 13), and Plaintiff's Reply Brief (doc. 16).[2] This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends that Claimant's request to reverse and remand the unfavorable decision of the Defendant, Frank J. Bisignano, Commissioner of Social Security, be granted.

---

[1] Frank J. Bisignano was appointed as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for his predecessor as the named defendant in this case.

[2] Citations to documents filed in this case are styled as "(Doc. # at __ )." Citations to the pages within the Administrative Record will be identified by "(R. at __ )." The Administrative Record appears at (doc. 6) on the docket.

## BACKGROUND

Zachary B. filed a Title II application for DIB and a Title XVI application for SSI benefits on September 8, 2021, with an alleged onset date of December 27, 2014.[3] (R. at 26). His claims were initially denied upon reconsideration on September 22, 2022, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 26). On June 20, 2023, Claimant appeared vis-à-vis telephone (all participants agreed to appear via telephone due to COVID-19 restrictions) and testified at a hearing before ALJ John Wood. (R. at 59–68). ALJ Wood also heard testimony from impartial vocational expert ("VE") Mr. Gusloff on that date. (R. at 68–80). ALJ Wood asserts that Claimant complied with the five-day evidence submission rule, as required under 20 C.F.R. §§ 404.935(a) and 416.1435(a),[4] by either submitting or informing him of all written evidence in advance of the hearing. (R. at 26). One day prior to the scheduled hearing, on June 19, 2023, Claimant's representative submitted approximately twenty pages of medical records, consisting of electrocardiogram (a.k.a. EKG) tracings dated between April 6 and June 18, 2023. (R. at 26). Although these records were not formally exhibited prior to the hearing due to

---

[3] At the hearing, Claimant, through representation, amended his alleged onset date from December 27, 2014, to April 21, 2020 (i.e., attainment of age fifty). (R. at 26, 60). *See* 20 C.F.R. 404.1563(d).

[4] The language and procedural requirements outlined in both 20 C.F.R. §§ 404.935(a) and 416.1435(a) are virtually identical. Subsection (a) of § 404.935 and subsection (a) of § 416.1435 both require parties requesting a hearing before an administrative law judge ("ALJ") to submit all necessary information or evidence, as detailed respectively in §§ 404.1512 and 416.912, at the time the hearing request is submitted, or to provide a summary of such evidence. Each subsection mandates that parties make diligent efforts to ensure the ALJ receives any additional relevant evidence at least five business days before the scheduled hearing date. If parties fail to meet this five-day deadline, the ALJ "may decline to consider or obtain the evidence," unless exceptional circumstances described in subsection (b) of each section apply.

2

initial questions regarding their origin, the issue was addressed on the record during the hearing and was entered into the administrative record. (R. at 26, 55). No medical expert testified at the hearing; however, there are medical source statements in the record that the ALJ references in his decision. (R. at 39–40).

On July 14, 2023, ALJ Wood denied Claimant's claim for both DIB and SSI. (R. at 44). In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the amended alleged onset date of April 21, 2020, through his date last insured of June 30, 2020. (R. at 29). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c). Specifically, Claimant suffered from congestive heart failure, coronary artery disease, atrial fibrillation, obesity, and sleep apnea. (R. at 29). The ALJ also acknowledged a non-severe medically determinable impairment—"restless leg syndrome"—but concluded that no compelling evidence supports a finding that the impairment "results in any appreciable daytime symptoms or limitations that would regularly interfere with basic work-related activities." (R. at 29).

While Claimant's severe impairments were acknowledged, at step three, the ALJ determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required under 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R. at 29–30). The ALJ

3

specifically considered Listings 4.02 (chronic heart failure), 4.04 (ischemic heart disease), and 4.05 (recurrent arrhythmias), but concluded that Claimant did not meet or medically equal the criteria for those listings. (R. at 29). In evaluating Listing 4.05, which pertains to recurrent arrhythmias not related to reversible causes—including atrial fibrillation and atypical atrial flutter—the ALJ acknowledged Claimant's ongoing cardiac complaints; however, the ALJ found that Claimant had not experienced uncontrolled recurrent episodes of syncope or near syncope, and in fact had routinely denied such symptoms. (R. at 29). Accordingly, the ALJ concluded that Listing 4.05 was neither met nor medically equaled. (R. at 29). Before step four,[5] the ALJ determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; need to avoid environmental hazards such as unprotected heights and dangerous machinery; and need to avoid concentrated exposure to extreme temperatures and pulmonary irritants.

(R. at 30). Claimant, age fifty as of his amended onset date, was considered to be closely approaching advanced age. (R. at 41); 20 C.F.R. 404.1563(d). Given this and his past relevant work as a construction worker (a heavy exertional occupation), at step four, the ALJ found that Claimant was incapable of performing his past relevant work. (R. at 42).

---

[5] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "In making this finding, the [ALJ] must consider all of the claimant's impairments, including impairments that are not severe." (R. at 28) (citations omitted). "The [residual functional capacity] is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

At step four, as previously mentioned, the ALJ concluded that Claimant retained the residual functional capacity ("RFC") to perform a reduced range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ found that Claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand or walk for up to six hours in an eight-hour workday, and sit for up to six hours. The RFC included additional limitations on postural activities and environmental exposure. (R. at 30–31). In determining the RFC, the ALJ evaluated the medical opinion evidence in accordance with the standards outlined in 20 C.F.R. § 404.1520c, which require consideration of the supportability and consistency of each medical opinion. Two distinct RFC assessments were issued at different stages of the administrative review process,[6] each by a state agency medical consultant. (R. at 40–41).

At the initial level of review, Dr. Reddy concluded that Claimant was capable of performing light work with certain restrictions. (R. at 88). Dr. Reddy's determination relied on the evidence available as of April 2022 and concluded that Claimant's impairments, while severe, did not preclude the performance of a reduced range of light work, forming the basis for the initial denial of benefits. (R. at 30). On reconsideration, the file was re-reviewed by Dr. Calixto Aquino, a separate state agency medical consultant, who opined that, as of Claimant's date last insured—June

---

[6] As part of the sequential evaluation process, the Social Security Administration requires an assessment of a claimant's RFC to determine the maximum a claimant can do despite physical or mental limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. In this case, two distinct RFC assessments were conducted by state agency medical consultants at different stages of the administrative review. (R. at 40–41).

30, 2020—Claimant was limited to sedentary work. (R. at 108–10). Dr. Aquino's reconsideration-level opinion reflected an assessment of an expanded medical record, including "evidence outside of the relevant period" not previously available to Dr. Reddy. (Doc. 9 at 13); (R. at 108–10).

In his decision rendered on July 11, 2023, the ALJ recognized the existence of these two conflicting RFC opinions. (R. at 40–41). In weighing these two opinions, the ALJ ultimately found Dr. Aquino's sedentary RFC "lacking in persuasive value." (R. at 41). The ALJ reasoned that Dr. Aquino provided no explanation for deviating from the light RFC concluded at the initial level, despite citing the same medical evidence as Dr. Reddy but failing to explain the change in exertional capacity or identify any clinical deterioration that would support such a limitation. (R. at 41, 108–10). That is, Dr. Aquino did not explain "why the [C]laimant was limited to sedentary work as of the date last insured," yet "currently capable of light work." (R. at 41). The ALJ then speculated that:

> The most likely explanation for the discrepancy between the exertional level on the reconsideration residual functional capacity assessments is that the state agency medical consultant, when completing the online template for the residual functional capacity for the period through the date last insured, accidentally "checked" the wrong option for exertional limitations for this period and failed to notice this mistake, especially as there was no "new" evidence for this period that would substantiate the reduction in residual functional capacity, and no explanation was provided for the reduction to sedentary work through the date last insured or why this unsubstantiated reduction would not still apply currently, but rather the claimant's exertional abilities apparently improved.

(R. at 41). Based on these factors, the ALJ declined to adopt Dr. Aquino's sedentary RFC assessment. (R. at 41). Instead, the ALJ relied on the earlier light RFC, which

6

he found consistent with the broader medical evidence, and determined that Claimant retained the capacity to perform a range of light work. (R. at 41–42).

The ALJ supported this conclusion by citing multiple treatment records showing that Claimant's atrial fibrillation, coronary artery disease, and congestive heart failure were generally stable, with unremarkable physical examinations and repeated denials of chest pain, shortness of breath, or syncope. (R. at 31–41). The ALJ observed that physical examinations were often unremarkable, pulmonary function tests were within normal limits, and Claimant consistently denied experiencing symptoms such as chest pain, shortness of breath, or syncope. (R. at 31–41). The ALJ also found that Claimant's obstructive sleep apnea improved with regular use of a CPAP machine. (R. at 41). Although Claimant testified to needing to elevate his legs throughout the day, the ALJ noted a lack of corroborating documentation from his primary care physician, Dr. Ade, whose treatment notes did not include any recommendation for regular leg elevation beyond a single episode related to a leg hematoma. (R. at 41–42). The ALJ, therefore, concluded that Claimant "failed to establish that he would be unable to perform a limited range of light work." (R. at 42).

Finally, at step five—in considering Claimant's age, education, work experience, and residual functional capacity—the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 43). Specifically, relying on the testimony of the VE, the ALJ opined that Claimant "is capable of making a successful adjustment to" perform representative

jobs such as marker, routing clerk, or sorter. (R. at 43–44). Accordingly, the ALJ concluded that Claimant was not disabled under the framework of Medical-Vocational Rule 202.14. (R. at 43). In doing so, the ALJ acknowledged that had the sedentary RFC been adopted, Claimant's age and vocational profile would have directed a finding of disability under Rule 201.14 but found that the sedentary limitation was unsupported by the overall record. (R. at 41–42).

Claimant filed suit in this Court on June 5, 2024, seeking review of the ALJ's (and the Commissioner's) decision. (Doc. 1).

## LEGAL STANDARD

### I. ALJ Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the claimant must be disabled, as defined under 42 U.S.C. § 423(d)(1)(a). Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). Prescribed by regulation, the factual determination is made by applying a sequential five-step inquiry. This sequential

8

process requires the ALJ to examine, in order: (1) Whether the claimant is currently engaged in substantial gainful employment; (2) Whether the claimant has a severe impairment; (3) Whether the impairment meets or medically equals the criteria of a listed impairment enumerated in the regulations; (4) Whether the claimant can perform any past relevant work; and (5) Whether the claimant can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at steps three or five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). A negative answer at any step, other than step three, precludes a finding of disability. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The burden of proof is on the claimant at steps one through four; however, the burden then shifts to the Commissioner at step five to show the claimant's ability to engage in substantial gainful employment. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review." *Conor B. v. Kijakazi*, No. 20 CV 3342, 2022 WL 4079461, at *3 (N.D. Ill. Sept. 6, 2022).

## II. Judicial Review

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although

great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The Seventh Circuit emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). All that is required is that ALJs "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178,

181 (7th Cir. 1990). When reviewing for substantial evidence, courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Claimant raises two issues with the ALJ's decision that he argues require remand: (1) the ALJ's speculation when rejecting Dr. Aquino's opinion (i.e., "finding [Claimant] limited to sedentary exertional work and triggering a favorable decision on the Medical-Vocational Guidelines") was unsupported by substantial evidence; and "the ALJ's failure to assess the persuasiveness of both state agency physicians' opinions, specifically Dr. Aquino's, merits remand." (Doc. 9 at 10). In doing so, Claimant "does not assert that Dr. Aquino's opinion requires adoption"; instead, he "argues that the ALJ's flawed findings fail to show that he built an adequate bridge between that opinion and his conclusion, relying on speculation and superficial analysis." (Doc. 9 at 21).

For the Following reasons, the Court recommends remand.

### I.  ALJ's Treatment of the Agency Consultants' Opinions

In arguing that the ALJ's speculation in rejecting Dr. Aquino's opinion was unsupported by substantial evidence, Claimant is arguing that the ALJ's RFC assessment failed to build a logical bridge "between that opinion and his conclusion." (Doc. 9 at 21). The RFC is "defined as the most physical and mental work the claimant can do on a sustained basis despite her limitations." *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022) (citing 20 C.F.R. § 404.1545(a)). "While the ALJ is not

required to address every piece of evidence, he must articulate some legitimate reason for his decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Critically, "an ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

Here, the ALJ's rejection of Dr. Aquino's opinion was speculative and not evidence-based. The ALJ dismissed Dr. Aquino's sedentary RFC opinion primarily because of internal inconsistency, lack of explanation, and suspected clerical error. Specifically, the ALJ noted that the internal inconsistency was that Dr. Aquino's reconsideration-stage opinion relied on the "same medical evidence" previously used to support a light RFC in the initial assessment, yet concluded that Claimant was limited to sedentary work as of the date last insured. (R. at 41). Notably, no treating or examining medical opinion in the record directly contradicts Dr. Aquino's sedentary RFC. The initial light RFC (by Dr. Reddy) was based on an earlier and more limited evidentiary record. Furthermore, the VE testified that no competitive employment would be available if Claimant were limited to sedentary work with further restrictions (e.g., fatigue, elevation of legs, need for breaks). (R. at 73–75).

At this juncture, the record contradicts that Dr. Aquino's opinion relied on the "same medical evidence," demonstrating instead that Dr. Aquino evaluated additional cardiopulmonary testing results and updated treatment records from 2021 and 2022—evidence not available to or reviewed by the initial examiner. (R. at 106–07). Indeed, the ALJ's own decision acknowledges this discrepancy. On the preceding page, the ALJ noted that Dr. Aquino "cite[d] more evidence, including more recent

12

evidence, for the residual functional capacity assessment that reflects current functioning." (R. at 40). The ALJ, nonetheless, criticized Dr. Aquino for failing to explain how this newer evidence justified imposing additional postural limitations, as "the ALJ may not analyze only the evidence supporting [their] ultimate conclusion while ignoring the evidence that undermines it." *Moore*, 743 F.3d at 1123.

Next, in rejecting Dr. Aquino's opinion, the ALJ reasoned that Dr. Aquino failed to explain his change from light to sedentary restrictions. (R. at 41). Claimant argues that "if the ALJ doubted the validity of Dr. Aquino's opinion, he had a duty to contact Dr. Aquino and seek clarification."[7] (Doc. 9 at 15). In doing so, he cites *Barnett v. Barnhart*, 381 F.3d 664, 669–70 (7th Cir. 2004), for the proposition that "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." In response, the Commissioner notes that "[a]n ALJ needs to recontact a medical source, or otherwise develop the record, only when there is insufficient evidence to determine disability." (Doc. 13 at 5). The Court agrees that recontacting Dr. Aquino was not required, as 20 C.F.R. § 404.1520b does not obligate the ALJ to recontact Dr. Aquino when, as here, the record was sufficiently developed. (Doc. 13 at 5). Moreover, this argument is a red herring, as the issue is not failure to develop the record, but failure to evaluate the record accurately.

Recontacting Dr. Aquino was not warranted; however, that does not excuse the ALJ's lack of articulating a legitimate reason for discrediting Dr. Aquino's opinion

---

[7] Notably, Claimant points out that *Barnett v. Barnhart*, 381 F.3d 664, 669–70 (7th Cir. 2004), relies on regulations "from the old medical opinion regulation." (Doc. 9 at 15 n.2). As such, the persuasiveness of this argument is diminished due to the rescission of the Social Security Rulings and regulations cited within.

(i.e., that Claimant was limited to sedentary work as of the date last insured). *See* 20 C.F.R. § 404.1520c(c). More pointedly, while the ALJ provided a thorough recitation of the events sequentially, his analysis stops short of connecting any of those dots. Plainly, the ALJ discredits Dr. Aquino's opinion because he reached a different conclusion than Dr. Reddy and did not explain why. (R. at 41). On this basis, the ALJ did not "articulate some legitimate reason for" dismissing Dr. Aquino's opinion. *Clifford*, 227 F.3d at 872.

Finally, the ALJ speculated that the sedentary limitation may have resulted from a clerical error in the electronic template, suggesting that Dr. Aquino "accidentally 'checked' the wrong option for exertional limitations for this period and failed to notice this mistake." (R. at 41). As stated, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. However, speculative reasoning—unsupported by actual evidence—cannot meet that threshold. Here, there was no checkbox for exertional limitations on the attached form. (R. at 108). Instead, Dr. Aquino explicitly typed out that Claimant could only "Occasionally lift and/or carry (including upward pulling): **10 pounds**" and "Frequently lift and/or carry (including upward pulling): **Less than 10 pounds**." (R. at 108). *See also* (Doc. 9 at 13) ("The hours of standing and the weight to be lifted were designed in the form."). While the ALJ was permitted to weigh consistency and supportability, asserting that Dr. Aquino may have selected the wrong RFC level due to a clerical error is pure speculation and not evidence. 20 C.F.R. § 404.1520c. The problem with the ALJ's speculation is that the form that Dr.

14

Aquino used was not a checkbox form, which is evident from reviewing the record. (R. at 108). Thus, absent affirmative evidence that Dr. Aquino committed such an error, the ALJ's clerical-error "theory" lacks a factual basis.

Compounding on the issue, the ALJ acknowledged that if the sedentary RFC were accepted, Claimant would be deemed disabled under Rule 201.14 of the Medical-Vocational Guidelines due to his vocational characteristics. (R. at 41). As part of his justification for concluding that the sedentary RFC must have been a clerical error, the ALJ states that "if the sedentary residual functional capacity as of June 30, 2020, was accurate, DDS would have been required to find the claimant 'disabled' based on his vocational characteristics." (R. at 41). The VE confirmed that no work would be available under a sedentary RFC with additional fatigue-based limitations. (R. at 73–74). Claimant's testimony also corroborated the presence of pre-date last insured limitations consistent with sedentary work, and the ALJ did not explicitly discredit this testimony. (R. at 53–64). As such, the cumulative record does not support the ALJ's findings.

Indeed, this speculative reasoning fails to meet the substantial evidence standard. The Court recommends that this case be remanded not on this speculative statement alone; rather, in this instance, remand is recommended because the ALJ has not provided enough of a bridge to take the Court from the medical evidence to his conclusion. Courts have routinely rejected ALJ decisions based on hypothetical errors or assumptions about clerical mistakes without factual support. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to 'cherry-pick' from

15

those mixed results to support a denial of benefits."); *Suelflow v. Berryhill*, No. 15 C 9241, 2017 WL 4467469, at *4 (N.D. Ill. Oct. 6, 2017) ("Accordingly, the ALJ erred by offering an insufficient basis for her speculation that Dr. Calimag's opinion may be sympathetic."); *Kristine S. v. Saul*, No. 19 C 1485, 2020 WL 4586115, at *7 (N.D. Ill. Aug. 10, 2020) ("Such oversight fails to build any bridge between the record, the ALJ's own findings, and her assessment of Dr. Stein's testimony.").

The Court, therefore, finds that the ALJ's dismissal of the sedentary RFC was not supported by substantial evidence and recommends remand.

## II. Jobs Existing in Significant Numbers in the National Economy

Because remand is recommended for errors in the ALJ's speculation of Dr. Aquino's opinion, the Court need not address Claimant's remaining arguments at this time. However, in concluding, the Court notes that substantial evidence does not clearly support the ALJ's determination that the jobs Claimant could perform existed in significant numbers in the national economy. *See Jerome S. v. Saul*, No. 18 CV 6095, 2020 WL 374694, at *10 n.4 (N.D. Ill. Jan. 23, 2020) ("Courts can *sua sponte* address issues in social security cases that a party has not raised."). The ALJ concluded, relying exclusively on the VE's testimony, that Claimant could perform work as, inter alia, a "price marker" (DOT # 209.587-034), with approximately 100,000 such light, unskilled positions existing nationally.[8] (R. at 43). Yet, the VE

---

[8] A "marker" or price marker, according to the SSA's Dictionary of Occupational Titles, "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor

provided no information regarding the timeliness or accuracy of this employment data, nor did he specify when the data was last updated. (R. at 69). Consistent with several other courts, this Court thus conveys doubt as to whether these positions truly exist in "significant" numbers. *See Henderson v. O'Malley*, No. 21-CV-3304, 2024 WL 127843, at *5 (E.D.N.Y. Jan. 11, 2024) ("Among other things, there have been recent reports that the Dictionary of Occupational Titles, from which the 'price marker' job was drawn, includes jobs that have become virtually extinct in the United States.").

## CONCLUSION

For the reasons set forth above, it is recommended that the Commissioner's decision denying the Plaintiff's application for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings consistent with the findings in this Report and Recommendation under 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO RECOMMENDED.

---

of discrepancies. May print information on tickets, using ticket-printing machine." *209.587-034 Marker*, Dictionary of Occupational Titles, 1991 WL 671802.

Entered this 28th day of May 2025.

s/ Ronald L. Hanna  
Ronald L. Hanna  
United States Magistrate Judge